**RECORD NO. 12-2287**

In The
# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES, STATE OF CALIFORNIA, STATE OF GEORGIA, STATE OF ILLINOIS, STATE OF NEW YORK, STATE OF TENNESSEE EX REL., STEVEN MAY AND ANGELA RADCLIFFE,

*Plaintiff – Appellant,*

v.

## PURDUE PHARMA L.P., a limited partnership, and PURDUE PHARMA, INCORPORATED,

*Defendants – Appellees.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BECKLEY

————————————

## REPLY BRIEF OF APPELLANT

————————————

Mark T. Hurt
THE LAW OFFICES OF MARK T. HURT
159 West Main Street
Abingdon, VA  24210
(276) 623-0808

Paul W. Roop, II
ROOP LAW OFFICE, LC
111 Morning Star Lane
Beckley, WV 25801
(304) 255-7667

*Counsel for Appellant*

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street  ♦  Suite 230  ♦  Richmond, VA  23219
804-249-7770  ♦  www.gibsonmoore.net

## TABLE OF CONTENTS

PAGE:

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   Purdue Fails To Rebut The Conclusion, With Which The
     Government Concurs, That The District Court Erred In
     Dismissing The Complaint On *Res Judicata* Grounds . . . . . . . . . . . . 1

     A.   Purdue's Arguments That The Radcliffe Judgment
          Was On The Merits Are Erroneous And Do Not
          Withstand Scrutiny . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

     B.   Purdue's Attempt To Distinguish *Gebert* and
          *Rhodes* Are Refuted By The Texts Of Those
          Decisions  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

     C.   Controlling Law Mandates That A Judgment Not
          On The Merits, Like The Radcliffe Action
          Judgment, Cannot Operate As *Res Judicata* Even
          If It Was Noted As Being "With Prejudice." . . . . . . . . . . . . . 5

     D.   By Its Erroneous *Res Judicata* Argument, Purdue Seeks
          to Rewrite The Release to Encompass The Rights Of The
          United States And Relators  . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  The Alternative Bases Offered By Purdue For Affirmance Of
     The District Court Judgment Are Not Appropriate And Lack
     Merit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

     A.   The "Public Disclosure" Bar Is Precluded As An
          Alternative Basis For Affirmance Because Controlling
          Circuit Law Requires That The District Court First Make
          The Requisite Factual Findings  . . . . . . . . . . . . . . . . . . . . . . . 8

-i-

1.    Controlling Supreme Court Decisions Preclude
      The Retroactive Operation Of The 2010
      Amendments To The Public Disclosure Bar To
      Purdue's Alleged Wrongful Conduct  . . . . . . . . . . . . . 8

2.    Controlling Circuit Law Mandates That, Before
      The Public Disclosure Bar Applies, The Relator
      Must Have "Actually Derived" His Allegations
      From A Public Disclosure  . . . . . . . . . . . . . . . . . . . . . . 10

3.    Controlling Circuit Law Precludes An
      Adjudication Of A Jurisdictional Challenge Based
      On The Public Disclosure Bar Where, As Is True
      Here, The District Court Has Not Yet Made The
      Requisite Factual Findings . . . . . . . . . . . . . . . . . . . . . . 11

4.    Circuit Law Precludes Purdue's Argument That
      The Turns Of Phrases The Two Complaints Have
      In Common Automatically Trigger The Public
      Disclosure Bar  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

5.    Circuit Law Expressly Rejects Purdue's (and the
      Government's) Characterization Of Actions Like
      This One As "Parasitic . . . . . . . . . . . . . . . . . . . . . . . . . 17

B.    Rule 9(b) Is An Inappropriate Alternative Basis
      For Affirmance Because The District Court Has
      Not Ruled On It, And Because, In Any Case, The
      Complaint Complies With Rule 9(b)  . . . . . . . . . . . . . . . . . . . 19

1.    Appellate Decisions Make Clear That When A
      Rule 9(b) Challenge Is Not Adjudicated By The
      District Court, As Is True Here, It Is Not A Proper
      Alternative Basis For Affirmance  . . . . . . . . . . . . . . . . 19

2.    In Any Case, The Complaint Complies With Rule
      9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

a.  Relators' Complaint Pleads The Specific
    Circumstances Constituting The Fraud . . . . . . . 21

b.  Purdue's Argument That Rule 9(b)
    Mandates That Relators Must Specify
    Individual Claims Is Contrary To The Trend
    And Weight Of Federal Appellate Authority
    And The Position Of The United States . . . . . . 22

c.  This Trend In Appellate Authority, Which
    The Government Has Adopted, Of A
    Flexible, Content-Specific Approach To
    Rule 9(b), Is Consonant With This Court's
    Approach In *Harrison* . . . . . . . . . . . . . . . . . . . 25

C.  Purdue's First-To-File Bar Argument Fails Because It Is
    Based On A Construction Of 31 § 3730(b)(5) Contrary
    To Its Plain Language And  Rejected By Every Federal
    Appellate Court Addressing The Issue . . . . . . . . . . . . . . . . 26

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

-iii-

# TABLE OF AUTHORITIES

**PAGE(S):**

**CASES:**

*Baris v. Sulpicio Lines*,
74 F.3d 567 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Campbell v. Redding Med. Center*,
421 F.3d 817 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Costello v. United States*,
365 U.S. 265 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Ebeid v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Eberhardt v. Integrated Design & Constr., Inc.*,
167 F.3d 861 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Firestone v. Firestone*,
76 F.3d 1205 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Graham Cty. S&W Cons. Dist. v. United States ex rel. Wilson*,
130 S. Ct. 1396 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Harrison v. Westinghouse Savannah River Co.*,
176 F.3d 776 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 25, 26

*Hughes Aircraft Co. v. United States ex rel. Schumer*,
520 U.S. 939 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*In re Natural Gas Royalties ex rel. United States v. Exxon*,
566 F.3d 956 (10th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
    538 F. Supp. 2d 367 (D. Mass. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Luce v. Edelstein*,
    802 F.2d 49 (2nd Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Miller v. Nationwide Ins. Co.*,
    2008 U.S. App. LEXIS 16922 (5th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . 6

*New York v. Amgen, Inc.*,
    652 F.3d 103 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Rhodes v. E.I. du Pont du Nemours & Co.*,
    636 F.3d 88 (4th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 5

*Rockwell Int'l Corp. v. United States*,
    549 U.S. 457 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Saylor v. Lindsley*,
    391 F.2d 965 (2nd Cir. 1968) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Schindler Elevator Corp. v. United States ex rel. Kirk*,
    131 S. Ct. 1885 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Silverstrand Inv. v. AMAG Pharms.*,
    2013 U.S. App. LEXIS 2525 (1st Cir. Feb. 4, 2013) . . . . . . . . . . . . . . . . . 19

*Struna v. Shepherdstown Planning Comm'n*,
    2011 U.S. Dist. LEXIS 24016 (N.D. W. Va. 2011) . . . . . . . . . . . . . . . . . . 6

*United States v. Albinson*,
    2010 U.S. Dist. LEXIS 83644 (D. N.J. 2010) . . . . . . . . . . . . . . . . . . . . . . 23

*United States v. Purdue*,
    600 F.3d 319 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States ex rel. Assocs. Against Outier Fraud v*
*Huron Consult. Group, Inc.*,
　　2011 U.S. Dist. LEXIS 7335 (S.D.N.Y. 2011) . . . . . . . . . . . . . . . . . . . . . . 23

*United States ex rel. Batiste v. SLM Corp.*,
　　659 F.3d 1204 (D.C. Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, *29*

*United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*,
　　606 F.3d 361 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, *29*

*United States ex rel. Eisenstein v. City of New York*,
　　556 U.S. 928 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States ex rel. Folliard v. CDW Tech. Servs., Inc.*,
　　722 F. Supp. 2d 20 (D.D.C. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States ex rel. Gebert v. Transport Administrative Services*,
　　260 F.3d 909 (8th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

United States ex rel. Grubbs v. Kanneganti,
　　565 F.3d 180 (5th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States ex rel. Hutcheson v. Blackstone Med. Inc.*,
　　647 F.3d 377 (1st Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*United States ex rel. Jones v. Collegiate Funding Servs.*,
　　No. 3:07-CV-290)(E.D. Va. Oct. 14, 2010) . . . . . . . . . . . . . . . . . . . . . . . 21

*United States ex rel. Lemmon v. Envirocare of Utah, Inc.*,
　　614 F.3d 1163 (10th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*United States ex rel. Lockey v. City of Dallas*,
　　2013 U.S. Dist. LEXIS 9358 (N.D. Tex. Jan. 23, 2013) . . . . . . . . . . . . . 10

*United States ex rel. Lujan v. Hughes Aircraft*,
　　243 F.3d 1181 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*United States ex rel. Lusby v. Rolls-Royce Corp.*,
  570 F.3d 849 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*,
  __ F.3d __, 2013 U.S. App. LEXIS 765
  (4th Cir. Jan. 11, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 25

*United States ex rel. Ondis v. City of Woonsocket*,
  587 F.3d 49 (1st Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States ex rel. Osheroff v. Humana, Inc.*,
  2012 U.S. Dist. LEXIS 139949 (S.D. Fla. 2012) . . . . . . . . . . . . . . . . . . . . . 9

*United States ex rel. Radcliffe v. Purdue Pharma, LP*,
  582 F. Supp 2d 766 (W.D. Va. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States ex rel. Rostholder v. Omnicare, Inc.*,
  2012 U.S. Dist. LEXIS 114278 (D. Md. 2012) . . . . . . . . . . . . . . . . . . . . . . 10

*United States ex rel. Siller v. Becton Dickinson & Co.*,
  21 F.3d 1339 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*United States ex rel. Walker v. R&F Props.*,
  433 F.3d 1349 (11th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*United States ex rel. Wilson v. Graham County S&W Conv.*,
  399 Fed. Appx. 774 (4th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

**STATUTES:**

31 U.S.C. § 3730(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 28

31 U.S.C. § 3730(b)(b)(5) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

31 U.S.C. § 3730(e)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 13

**RULE:**

Rule 9(b)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

**OTHERS:**

2A J. Moore & J. Lucas,
*Moore's Federal Practice*,
    (P 9.03)(2d ed. 1986)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Black's Law Dictionary (8th ed.) 1315
    The First Definition of "Assign" . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Patient Protection and Affordable Care Act,
    Publ. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-902 (2010)  . . . . . 9

www.legal-dictionary.thefreedictionary.com  . . . . . . . . . . . . . . . . . . . . . . . . . 27

www.uslegal.com/a/actionpending/  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# ARGUMENT

**I.    Purdue Fails To Rebut The Conclusion, With Which The Government Concurs, That The District Court Erred In Dismissing The Complaint On *Res Judicata* Grounds.**

### A.    Purdue's Arguments That The Radcliffe Judgment Was On The Merits Are Erroneous And Do Not Withstand Scrutiny.

In its amicus brief, the Government concurs with relators that the district court erred in dismissing the complaint on basis of *res judicata*.  (Gov't Br. 8)  As shown below, Purdue failed to rebut the reasons compelling that conclusion.

Purdue concedes that for the Radcliffe Action judgment to operate as *res judicata* in this case that the judgment had to be on the merits.  (Purdue Br. 9)  Purdue's only argument on this point is that the judgment was not on the merits because "release and bar" is an affirmative defense, and Purdue contends that an affirmative defense can never be jurisdictional.  (Purdue Br. 10)  Purdue then cites a multitude of cases for that proposition. (Id. at 10-11)  As shown below, Purdue's "form over substance" argument does not bear scrutiny for at least two reasons.

First, Purdue fails to take into account that in a *qui tam* action, unlike in a typical action, the plaintiff is primarily asserting the claims of another – the Government.  No one contends, and this Court did not hold, that the release Radcliffe gave to Purdue released or purported to release those claims.  In fact,

-1-

this Court held to the contrary.  *United States v. Purdue*, 600 F.3d 319, 329 (4th Cir. 2010)("The Release, of course, did not prohibit the government or another relator from pursuing similar claims against Purdue.").  Thus, unlike the typical release asserted as an affirmative defense, which release would purport to release the claims asserted in the case in question, the effect of Radcliffe's release was not to release those claims of the Government, but rather to strip Radcliffe of his right to assert those claims on behalf of the Government.   In a typical case, the release goes to the merits of the case because it nullifies the underlying claims.  But, as was conceded by Purdue, that is not true with respect to Radcliffe's release; the Government's claims still exist, it is just that Radcliffe can no longer assert them because as a result of the release he no longer has a partial interest or assignment in them to give him a personal stake in the case, and thus no longer has Article III standing to bring suit on them.   All of the decisions cited by Purdue for the "release is an affirmative defense" proposition can be distinguished on that basis and are thus inapposite.

Second, Purdue does not dispute that, regardless of the form of, or stated reason for, the dismissal, if it was, in essence, based on a lack of jurisdiction, then the dismissal should be regarded as one for lack of jurisdiction.  As discussed above and in relators' initial brief, this Court's dismissal was, in essence, one

based on Radcliffe's lack of Article III standing and should be treated as such for *res judicata* purposes.

**B.     Purdue's Attempt To Distinguish *Gebert* and *Rhodes* Are Refuted By The Texts Of Those Decisions.**

As shown in relators' initial brief, the Eighth Circuit decision of *United States ex rel. Gebert v. Transport Administrative Services*, 260 F.3d 909 (8th Cir. 2001), is on all fours in holding that a relator who releases his right to bring a *qui tam* action is thereby stripped of his Article III standing to bring the *qui tam* action.  Purdue attempts to distinguish *Gebert* by contending incorrectly that the decision, for purposes of ascertaining standing, finds a crucial difference between the relators' assignment by operation of law of their interest in a *qui tam* claim to their bankruptcy estate, and their execution of a release of that claim, with the former having stripped them of their standing to bring the claim, while the latter did not.  (Purdue Br. 12)   *Gebert* does no such thing, as its text makes clear:

> even if we accepted the proposition that the United States had assigned [by operation of the FCA] the *qui tam* claim to the Geberts subsequent to their filing for bankruptcy, **it cannot be disputed that the Geberts had assigned their right to the *qui tam* claim to the bankruptcy estate through the settlement agreement and release**. The Geberts fail to recognize that the critical point is when *they* transferred their right to the *qui tam* claim to the bankruptcy estate, not when the United States claims it assigned the claim to the Geberts.

-3-

> **An assignment from the United States subsequent to the Geberts' discharge in bankruptcy would simply pass to the bankruptcy estate [by operation of the settlement agreement and release], leaving the Geberts without standing to bring the *qui tam* claim. We find that the Geberts lack standing to bring the claim.**

*Id.* at 915 (emphasis added).  Thus, the Eighth Circuit in *Gebert,* for purposes of standing, makes no distinction between a transfer of the relator's interest in a *qui tam* claim that is effectuated by an assignment by operation of law (failure of relators to disclose the interest in the bankruptcy proceedings) and one that is accomplished by a written release.  *See id.*  In both cases, the prospective relator's interest in the *qui tam* claim was transferred to another, thereby stripping the prospective relator of his standing to bring the *qui tam* action.  *Id.*  In fact, a release is a type of assignment in which one assigns[1] (or transfers) a claim to the person against whom it could have been enforced.  *See*, *e.g.,* Black's Law Dictionary (8th ed.) 1315 (definition of release: "the act of giving up a right or claim to the person against whom it could have been enforced").

Purdue's attempt to distinguish *Rhodes v. E.I. du Pont du Nemours & Co.*, 636 F.3d 88 (4th Cir. 2011), (Purdue Br. 13), likewise falls short.  In *Rhodes*, as

---

[1] To "assign" simply means to convey or transfer rights or property.  *See* Black's Law Dictionary (8th ed.) 127 (first definition of "assign").

-4-

Purdue noted, this Court held that a putative class plaintiff no longer had a personal interest supporting his Article III standing to appeal after he disposed of his individual claims through settlement. *Id.* Purdue contends that Mark Radcliffe was different, and retained that interest despite the release because "[h]ad Radcliffe prevailed, he would have been eligible for a significant bounty." (Purdue Br. 13) But Purdue thereby begs the question of why Radcliffe did not prevail. It was because he released, i.e., settled his claims against Purdue, which this Court held included his interest in the *qui tam* claims against Purdue arising from its defrauding of the Government, and thus no longer had a personal interest in those claims. Accordingly, like the putative class plaintiff in *Rhodes*, Radcliffe's assignment of his interest in the claims at issue in the case stripped him of Article III standing to bring the case. *See* 636 F.3d at 100.

### C. Controlling Law Mandates That A Judgment Not On The Merits, Like The Radcliffe Action Judgment, Cannot Operate As *Res Judicata* Even If It Was Noted As Being "With Prejudice."

Purdue suggests that the district court's dismissal of the Radcliffe Action with prejudice, which was affirmed by this Court, in and of itself converts the judgment to one on the merits for purposes of *res judicata*. (Purdue Br. 14-19) This is wrong. The United States Supreme Court has held that if a case was not resolved "on the merits," then it cannot operate as a bar to a second case pursuant

to *res judicata*, regardless of whether or not the case was dismissed "with prejudice." *Costello v. United States*, 365 U.S. 265 (1961); *see also Baris v. Sulpicio Lines*, 74 F.3d 567, 572 (5th Cir. 1996)(*citing Costello*, holding that the dismissal of an earlier case should not be given *res judicata* effect "even in light of the 'with prejudice' designation" because the dismissal was in essence a dismissal for lack of jurisdiction)[2]. Accordingly, if this Court's judgment in Radcliffe Action were, in essence, a dismissal based on a lack of standing, which as shown above and in relators' initial brief it was, and therefore not a judgment on the merits, it can have no *res judicata* effect even though the dismissal was noted as being "with prejudice." *See Costello*; *Baris*.

Purdue suggests that the United States had an obligation to request that this Court clarify its ruling in the Radcliffe Action on the "prejudice" issue. (Purdue Br. 14) This is wrong. The United States Supreme Court recently made clear that

---

[2] See *also Saylor v. Lindsley*, 391 F.2d 965, 968 (2nd Cir. 1968)("the dismissal 'with prejudice' in the [prior] action was not a disposition 'on the merits' for purpose of *res judicata*, and is not a bar to the timely commencement of a new action"); *Miller v. Nationwide Ins. Co.*, 2008 U.S. App. LEXIS 16922 (5th Cir. 2008) at *19-20 ("regardless of the 'with prejudice' designation, the dismissal was not a final judgment on the merits. . . . Thus, the [subsequent] claim is not barred by res judicata"); *Struna v. Shepherdstown Planning Comm'n*, 2011 U.S. Dist. LEXIS 24016 (N.D. W. Va. 2011) at *10-12 (dismissal based on ground that did not go to the merits, even if labeled "with prejudice," does not bar a second suit alleging the same claim, citing *Costello*)

-6-

the United States is not considered a party to a FCA action in which it has not intervened. *United States ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009)("The United States, therefore, is a 'party' to a privately filed FCA action only if it intervenes in accordance with the procedures established by federal law."). Thus, the United States was not a litigant in the Radcliffe Action and had no obligations in that capacity.

It is true, as *Eisenstein* observed, that the Government can be bound by the results in a nonintervened *qui tam* case. *Id.* at 936. But that general principle provides no justification for the Government (or another relator acting for the Government) not being accorded the benefit of controlling law that a judgment that is not on the merits should not be given *res judicata* effect.

> **D.    By Its Erroneous *Res Judicata* Argument, Purdue Seeks to Rewrite The Release to Encompass The Rights Of The United States And Relators.**

Purdue did not contend that the United States or the relators here were signatories to the release that Mark Radcliffe executed or that that release encompassed any of their rights when it urged this Court to enforce it in the Radcliffe Action. But now, by way of an erroneous application of *res judicata,* Purdue now seeks, in effect, to have the Court rewrite the release to encompass

-7-

claims of the United States and those of the relators.  The Court should reject

Purdue's request.

To the extent that Purdue is suggesting that the release should apply to

Angela Radcliffe simply because she is married to Mark Radcliffe, that rationale is

outdated and should be rejected.  While a married woman's legal identity was at

one time subsumed in that of her husband, this has not been the case for a long

time.  As is universally recognized by American courts, a married woman now has

a full and equal legal status separate and apart from that of her husband.

## II.    The Alternative Bases Offered By Purdue For Affirmance Of The District Court Judgment Are Not Appropriate And Lack Merit.

### A.    The "Public Disclosure" Bar Is Precluded As An Alternative Basis For Affirmance Because Controlling Circuit Law Requires That The District Court First Make The Requisite Factual Findings.

#### 1.    Controlling Supreme Court Decisions Preclude The Retroactive Operation Of The 2010 Amendments To The Public Disclosure Bar To Purdue's Alleged Wrongful Conduct.

As a preliminary matter, relators note that Purdue spends most of its effort

on the "public disclosure bar" issue arguing that the new version of the "public

disclosure bar" set forth in the 2010 amendment to the False Claim Act applies

retroactively to this case.  (Purdue Br. 22-29).   However, as Purdue notes, two

United States Supreme Court decisions expressly preclude the retroactive application of the amendment. *See Graham Cty. S&W Cons. Dist. v. United States ex rel. Wilson*, 130 S. Ct. 1396, 1400 n.1 (2010); *Schindler Elevator Corp. v. United States ex rel. Kirk*, 131 S. Ct. 1885, 1889 n. 1 (2011).[3] The new amendment narrows the sources of disclosure that trigger the bar and relaxes the requirements for qualifying as an "original source.[4]" Because the amendment changes "the existing cause of action for *qui tam* defendants by attaching a new disability in respect to transactions or considerations already passed," it cannot operate retroactively to apply to conduct occurring prior to the effective date of the amendment, July 10, 2010. *See Hughes Aircraft Co. v. United States ex rel. Schumer*, 520 U.S. 939, 948-52 (1997)(internal citation and quotation omitted). Federal courts specifically addressing the issue have reached the same conclusion. *See, e.g., United States ex rel. Osheroff v. Humana, Inc.*, 2012 U.S. Dist. LEXIS 139949 (S.D. Fla. 2012 at *22-23 n. 13 (applying *Hughes*

---

[3] In fact, the new version was enacted after oral argument but before the issuance of the decision in *Wilson*. Some of the arguments made by Purdue here in favor of retroactively were made by relator Wilson in her petition for rehearing that she filed with the Supreme Court. That Court denied the petition, rejecting those arguments.

[4] *Compare* 31 U.S.C. § 3730(e)(4) (2006) *with* 31 U.S.C. § 3730(e)(4) (2010)(as amended by the Patient Protection and Affordable Care Act, Publ. L. No. 111-148, § 10104(j)(2), 124 Stat. 119, 901-902 (2010)).

*Aircraft*, holding that "the 2010 amendments do not apply retroactively" to conduct occurring prior to the effective date of the amendments); *United States ex rel. Rostholder v. Omnicare, Inc.*, 2012 U.S. Dist. LEXIS 114278 (D. Md. 2012) at *26-27 n. 8 (same); *United States ex rel. Lockey v. City of Dallas*, 2013 U.S. Dist. LEXIS 9358 (N.D. Tex.  Jan. 23, 2013)(applying *Hughes Aircraft*, the 2010 amendment is not retroactive so as to apply to defendant's conduct occurring prior to July 10, 2010).  Tellingly, Purdue fails to cite a single court decision to the contrary, even though the law has been in effect for over two years.

None of the Purdue's conduct, as alleged in the complaint, took place subsequent to July 10, 2010.  Accordingly, the prior version of the public disclosure bar, and this Court's decisions construing it, namely *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339 (4ᵗʰ Cir. 1994), and its progeny, control.  *See Wilson; Schindler Elevator; Lockey*.

   2. **Controlling Circuit Law Mandates That, Before The Public Disclosure Bar Applies, The Relator Must Have "Actually Derived" His Allegations From A Public Disclosure.**

This Court, applying the plain statutory language of the pre-2010 version of the  "public disclosure bar,"  held that the relator must have "actually derived" his allegations from an applicable public disclosure before the bar can be triggered. *See United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1349 (4ᵗʰ

-10-

Cir. 1994). "[T]he Fourth Circuit [is] alone among the courts of appeals in favoring a narrow reading of the 'based upon' language" in the public disclosure bar. *United States ex rel. Ondis v. City of Woonsocket*, 587 F.3d 49, 57 (1ˢᵗ Cir. 2009).

> **3.** **Controlling Circuit Law Precludes An Adjudication Of A Jurisdictional Challenge Based On The Public Disclosure Bar Where, As Is True Here, The District Court Has Not Yet Made The Requisite Factual Findings.**

This Court made clear in *Siller* that, prior to a proper adjudication of a "public disclosure" challenge to jurisdiction, the district court must make the requisite factual findings, including whether the relator "actually derived" his allegations from public disclosures. *See Siller*, 21 F.3d 1339, 1349 (4ᵗʰ Cir. 1994)(remanding on the public disclosure issue because the district court had not made the necessary factual determinations as to whether the relator "actually derived his allegations" from a public disclosure). Furthermore, the district court must make such findings on a "claim-by-claim basis." *United States ex rel. Wilson v. Graham County S&W Conv.*, 399 Fed. Appx. 774, 776 (4ᵗʰ Cir. 2010)(*citing Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 476 (2007)). Here, the district court not only did not make the requisite factual findings, it did not rule on the jurisdictional challenge at all. Consequently, this issue is not yet ripe for

-11-

adjudication by this Court, and the Court should remand to the district court with instructions to make such findings.  *Id.*

Relators submitted plausible evidence upon which the district court reasonably could base a finding that the relators did not actually derive their allegations from an applicable public disclosure.  Relator Angela Radcliffe testified unequivocally that she learned of  the allegations of Purdue's wrongdoing in the complaint from her husband Mark Radcliffe. (JA 139 ¶5)  She testified that she learned of that wrongdoing directly from conversations with her husband Mark Radcliffe *before* he filed his complaint commencing the Radcliffe Action, and before that complaint was publicly disclosed.  (JA 138 ¶4)   As this Court has held, only disclosures that come from one of the sources listed in section 3730(e)(4) of the FCA are able to trigger the public disclosure bar.  *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 870 (4th Cir. 1999)(list set forth in section is exclusive; for a disclosure to trigger the bar, it must be from one of the listed sources).  The conversations between Mark and Angela Radcliffe from which Angela learned of Purdue's wrongdoing clearly do not constitute one of the sources listed in that section, *e.g.,* a civil hearing, or the news media. Accordingly, if the district court credits her testimony, then it could reasonably support a finding that her allegations of Purdue's wrongdoing were not "actually

-12-

derived" from an applicable public disclosure, such as the unsealed complaint in the Radcliffe Action, but were derived from a non-public source --- the conversations she had with her husband before he filed his complaint.

Relator Angela Radcliffe's testimony on this point is plausible and could reasonably be found credible by the district court.   It is certainly plausible, and even predictable, that Mark Radcliffe would share his suspicions of wrongdoing with his wife at the time that he formed them, which, of course, occurred before he filed suit, and certainly before his complaint would have been unsealed, and thereby "publicly disclosed."   (JA 138-39 ¶¶ 3-5) After all, the subject matter of the allegations necessarily affected Mark's livelihood and the family finances.

As to the allegations in the complaint from Steven May, he testified that he derived his knowledge of the alleged misrepresentations from his own experiences.  (JA 142 ¶ 5)  Since he was a salesman for Purdue, he could have derived all of those allegations from his work experience. (JA 16 ¶ 20)  This is obviously a plausible explanation that the district court could reasonably find credible.  Further, he testified that learned that those misrepresentations had been false and fraudulent directly from conversations with Mark Radcliffe, (JA 142 at ¶ 5), which conversations would not be considered as coming from a source listed in section 3730(e)(4).

-13-

Purdue's only evidentiary argument on this point is that the fact finder should infer that the relators actually derived their complaint from the unsealed complaints in the Radcliffe Action because their complaint has some snippets of language in common with complaint in the Radcliffe Action.  (Purdue Br. 12)

It is the role of the district court in the first instance to sort out and weigh the evidence, and determine its credibility, on this issue, and to make the necessary factual findings.

### 4. Circuit Law Precludes Purdue's Argument That The Turns Of Phrases The Two Complaints Have In Common Automatically Trigger The Public Disclosure Bar.

Purdue suggests that because that relators' complaint contains turns of phrases that are similar, and even identical to those in the Radcliffe Action complaint, relators necessarily derived their allegations from the public disclosure of that complaint for purposes of the public disclosure bar.  Controlling circuit law rejects this.  *See  Siller*, 21 F.3d at 1348.  This Court in *Siller* makes clear that "[a] suit that includes **allegations that happen to be similar (even identical) to those already publicly disclosed**, but were not

-14-

actually derived from those public disclosures, simply is not, in any sense, parasitic." *Id.* [5] (emphasis added).

More importantly, Purdue's erroneous suggestion is further refuted by this Court's clarification of what is determinative: the source of the relator's *knowledge* of the factual allegations. *Siller*, 21 F.3d at 1349 ("whether the relator actually derived his **knowledge** of those facts [in his complaint] from that [public] disclosure" is determinative (emphasis added)).[6]  Applying this point in a situation on all fours with this case, where the defendants contended, as Purdue does here, that a prior complaint containing the same language as the complaint at issue was an applicable public disclosure triggering the bar, this Court rejected defendant's contention:

> Siller argues, his complaint, even if substantially similar
> to that in the SSI litigation, was not 'based upon' the
> disclosures in the SSI complaint because he actually
> learned of BD's overcharging practices independently of
> the SSI complaint.

---

[5]  In light of the fact that the same counsel drafted the complaints in the Radcliffe Action and the complaint in this action alleging the same basic fraud technique, it would have been unusual for counsel not to use some of the same turns of phrases that they came up with and used in the Radcliffe Action.  In any case, it is nonsensical to contend, as Purdue does, that those phrases in the complaint in this action were "actually derived" *from the public disclosure* of the Radcliffe Action complaint that they, with the help of Mark Radcliffe, drafted.

* * * * * * * *

We agree with Siller's reading of "based upon" . . . .

*Siller*, 21 F.3d at 1347-48.

The ultimate source of the information that Angela Radcliffe and Steven May obtained from conversations with Mark Radcliffe was knowledge that, as United States District Court Judge Jones determined in the Radcliffe Action, Radcliffe had obtained from nonpublic sources, including his own first-hand experiences as a Purdue salesman and manager.  *See United States ex rel. Radcliffe v. Purdue Pharma, LP*, 582 F. Supp 2d 766, 768-774 (W.D. Va. 2008). Whether May learned of the allegations from conversations with Mark Radcliffe after Radcliffe's complaint was unsealed does not alter the analysis or result that is compelled by *Siller* so long as he did not learn about them from an applicable public disclosure. [7]

_____

[7]  Relators concede that if the ultimate source of the information were a public disclosure, then that would trigger the bar's application.  For instance, assume that a person read about allegations of fraud against the government in the newspaper, and then told another about it.  It is true that the other person learned of it directly from the conversation, a nonpublic source, but the ultimate source of his knowledge was the newspaper article — an applicable public disclosure source.  Thus, the bar would be triggered.  Here, by contrast, the source of Angela Radcliffe's and Steven May's relevant knowledge was conversations with Mark Radcliffe, who clearly acquired that knowledge from nonpublic sources, and May's personal first-hand experiences working for Purdue.  Thus, the ultimate sources of their knowledge were nonpublic.  Many viable non-parasitic FCA cases

-16-

Consequently, there is plausible evidence from which the district court could conclude that the allegations in the complaint were not "actually derived" from the Radcliffe Action complaint, or other public disclosure. Because the district court has not made any such findings, this Court should remand with instructions that the district court make them. Accordingly, the public disclosure bar is not an appropriate alternative basis for affirmance.

> **5.     Circuit Law Expressly Rejects Purdue's (and the Government's) Characterization Of Actions Like This One As "Parasitic."**

Purdue (and the Government) appear to suggest that the Court should not focus so much on the careful distinctions in this Court's public disclosure jurisprudence, but rather should go ahead and apply the bar because, they contend (Gov't Br. 8; Purdue Br. 20), the action is obviously "parasitic," and the bar is intended to preclude parasitic suits. They contend that this case is parasitic because of the fact that the relators did not learn of all of the key aspects of the fraud first-hand but gained knowledge of some of them second-hand from conversations with another person. (See, e.g., Gov't Br. 13) However, the Court has explicitly rejected this promiscuous application of the label "parasitic." As

---

in which the prospective relator learned about the fraud from family, friends, and co-workers would be barred by Purdue's construction of the public disclosure bar, which is contrary to this Court's construction of the bar set forth in *Siller*.

-17-

this Court pointed out in *Siller*, a case (like this one) in which the allegations are "identical [] to those already publicly disclosed, but were not actually derived from those public disclosures, **simply is not, in any sense, parasitic**." *United States ex rel. Siller v. Becton Dickinson & Co.*, 21 F.3d 1339, 1348 (4th Cir. 1994)(emphasis added). While the Government purports to be applying this Court's public disclosure bar decisions, it fails to explain how it reaches the conclusion that relators' acknowledgment that they derived the allegations of fraud from conversations with Mark Radcliffe indicates that they 'actually derived" those allegations from an applicable public disclosure, (Gov't Br. 13 (arguing that relators' allegations were "based upon" a public disclosure because "relators acknowledge that they derived their allegations of fraud largely from conversations they had with the relator in the prior lawsuit")) — this Court's test. It cannot. Thus, it appears that the Government's disagreement on the public disclosure issue is not so much with the relators as it is with this Court's distinctive jurisprudence controlling the issue.

-18-

**B.   Rule 9(b) Is An Inappropriate Alternative Basis For Affirmance Because The District Court Has Not Ruled On It, And Because, In Any Case, The Complaint Complies With Rule 9(b).**

**1.   Appellate Decisions Make Clear That When A Rule 9(b) Challenge Is Not Adjudicated By The District Court, As Is True Here, It Is Not A Proper Alternative Basis For Affirmance.**

Purdue's suggested alternative ground for affirmance on Rule 9(b) grounds fails for two important procedural reasons.  First, where defendants' Rule 9(b) challenge was not adjudicated by the district court, as is true here, federal appellate decisions hold that it is not a proper alternative basis for affirming a district court decision. *See United States ex rel. Hutcheson v. Blackstone Med. Inc.*, 647 F.3d 377, 384 (1st Cir. 2011)("Rule 9(b) is not a proper alternative ground for affirmance. The district court never considered this argument. It is up to the [district] court in the first instance to weigh the adequacy of the complaint for purposes of Rule 9(b) and, if appropriate, to provide an opportunity to correct [any] pleading deficiencies." (internal quotations and citations omitted)); *New York v. Amgen, Inc.*, 652 F.3d 103, 111 (1st Cir. 2011)(same);  *Silverstrand Inv. v. AMAG Pharms.*, 2013 U.S. App. LEXIS 2525 (1st Cir. Feb. 4, 2013) at *18 (same). Furthermore, even if this Court were to conclude that the complaint is deficient on Rule 9(b) grounds, which it should not, using that conclusion as an alternative

ground for affirmance would be particularly inappropriate here because "leave to amend is 'almost always' allowed to cure deficiencies in pleading fraud." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996)(*quoting Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir. 1986)(*quoting* 2A J. Moore & J. Lucas, Moore's Federal Practice, P 9.03 at 9-34)(2d ed. 1986)). Relators have not yet amended their complaint even once and are thus entitled to replead should their complaint be found deficient. *See id.* Purdue's contention that such an amendment would be futile should be rejected as sheer speculation.[8]

### 2.    In Any Case, The Complaint Complies With Rule 9(b).

Purdue's main contention with respect to its Rule 9(b) ground for dismissal is that relators are required, but have failed to provide, the specifics of individual false claims, i.e., details of specific prescriptions. However, as shown below, both

---

[8] In discussing Rule 9(b), Purdue stacks argument upon argument based on the statute of limitations to make the ludicrous suggestion that the complaint contains allegations of only two days of wrongdoing within the limitations period. (Purdue Br. 38). The alleged period of wrongdoing actually extends to December 31, 2009 (JA 20 ¶34)  Furthermore, Purdue fails to address relators' assertion of equitable tolling, for which they made a compelling argument in the district court (JA 125-128)  And Purdue also fails to address relators' contention that the statute of limitations was suspended by statute (Doc. 49). In any case, those arguments are irrelevant to the proper disposition by this Court of the Rule 9(b) ground, but to the extent that the Court considers the issue, relators hereby incorporate herein their arguments set forth in the above-mentioned district court filings.

-20-

the weight and trend of federal appellate and district court authority supports a more flexible approach that is more consonant with the directives of this Court.

The United States, which has primary responsibility for enforcing the FCA, also disagrees with Purdue's position, and concurs with relators that "it is possible for a relator (or the government) to describe an allegedly fraudulent scheme with sufficient specificity to satisfy Rule 9(b) without specifying any false claims."[9]

### a. Relators' Complaint Pleads The Specific Circumstances Constituting The Fraud.

Relators' complaint complies with Rule 9(b), which requires that the relator plead the "circumstances constituting the fraud" with "particularity," *see Harrison* v. *Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Those "circumstances" include "the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Id.* Relators' complaint provides all of those. The Complaint alleges that Purdue required its sales representatives to make specific false representations regarding OxyContin's potency and cost savings to physicians and others in order to promote the sales of OxyContin, including those paid by Medicaid. Necessarily implicit in those false representations was the false

---

[9] United States' Statement of Interest (Doc. 88), *United States ex rel. Jones v. Collegiate Funding Servs.*, No. 3:07-CV-290)(E.D. Va. Oct. 14, 2010).

-21-

assertion that the average multiple-dose potency of OxyContin was twice that of MS Contin.

> **b.  Purdue's Argument That Rule 9(b) Mandates That Relators Must Specify Individual Claims Is Contrary To The Trend And Weight Of Federal Appellate Authority And The Position Of The United States.**

Purdue suggests erroneously that Rule 9(b) requires that Relators specify in their complaint the details of individual false claims submitted to the Government. (Purdue Br. 28-29)  As shown below, the trend and weight of federal appellate authority, as well as the position of the United States, is that it is possible for a relator to describe an allegedly fraudulent scheme with sufficient specificity to satisfy Rule 9(b) without identifying any specific individual false claim.

As long as the complaint as a whole identifies the specifics of a fraudulent scheme and provides an adequate basis for reasonable inferences that false claims were more than likely submitted to the Government because of that scheme, as is true of the relators' complaint,  the requirements of Rule 9(b) are satisfied.  *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009); *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009)(same); *United States ex rel. Lemmon v. Envirocare of Utah, Inc*., 614 F.3d 1163 (10th Cir.

-22-

2010); *Ebeid v. Lungwitz,* 616 F.3d 993 (9th Cir. 2010); *United States ex rel.*

*Walker v. R&F Props.*, 433 F.3d 1349, 1360 (11th Cir. 2005).[10]

It is true that this Court requires the pleading of the submission of a specific

false claim where the strongest inference that can reasonably be drawn from the

allegations was only that the alleged wrongful actions "could have led" to  the

submission of a false claim.  *See United States ex rel. Nathan v. Takeda Pharm. N.*

*Am., Inc.*, 2013 U.S. App. LEXIS 765, at *3 (4th Cir. Jan. 11, 2013).  As discussed

below, relators are not subject to this requirement because it can be reasonably

inferred from the allegations that Purdue's fraudulent marketing, particularly its

direct marketing to Government institutions like the VA, necessarily led to the

submission of false claims.  *See id.* at *13.(requirement of pleading the details of a

specific false claim that was submitted does not apply where "[b]ased on the

nature of the schemes alleged . . . specific allegations of the defendant's fraudulent

conduct necessarily led to the plausible inference that false claims were presented

to the government").

---

[10]  *See also In re Pharmaceutical Industry Average Wholesale Price Litigation*, 538 F. Supp. 2d 367, 391 (D. Mass. 2008)(FCA allegations met Rule 9(b) even though relator did "not plead the details of specific false claims"); *United States ex rel. Folliard v. CDW Tech. Servs., Inc.*, 722 F. Supp. 2d 20 (D.D.C. 2010); *United States ex rel. Assocs. Against Outier Fraud v Huron Consult. Group, Inc.*, 2011 U.S. Dist. LEXIS 7335 (S.D.N.Y. 2011); *United States v. Albinson*, 2010 U.S. Dist. LEXIS 83644 (D. N.J. 2010).

-23-

Relator May was a salesman for Purdue. (JA 141 ¶1) It is reasonable to infer that he was in a position to learn of the that a substantial portion of the prescriptions written for OxyContin were being paid by Medicaid. (JA 142 ¶4) There was no reason for the physicians and pharmacists not to go ahead and write the prescriptions for OxyContin for their patients, including those on Medicaid, in response to the false sales pitches and for the pharmacies to file with Medicaid for reimbursement of those filled prescriptions. The physicians and pharmacists were innocent and unknowing participants in Purdue's fraudulent scheme. Thus, it is reasonable to infer here, as May knew to be true from his position at Purdue, that a substantial portion of the OxyContin prescriptions written in response to Purdue's marketing program resulted in false claims to Medicaid. (JA 18 ¶ 26)

Additionally, May alleges in his complaint that he employed Purdue's fraudulent marketing to Government institutions, such as the Veteran's Administration. (JA 17 ¶ 22) Those sales calls, in which he unwittingly employed Purdue's fraudulent marketing techniques, resulted in sales of OxyContin, and thus necessarily led to the submission of false claims.

Accordingly, this Court's decision in *United States ex rel. Nathan v. Takeda Pharm. N. Am., Inc.*, __ F.3d __, 2013 U.S. App. LEXIS 765 ((4th Cir. Jan. 11,2013), is distinguishable on that basis. That decision dealt with the off-label

-24-

marketing of drugs, in which the physician, after having received the off-label

marketing, had the choice whether to prescribe to patients for off-label uses. *Id.* at

*4. In that case, the Court required the relator to plead a specific false claim

because, unlike this case, in that case one could infer from the allegations that the

wrongful actions only that there was a possibility that they could have led to the

submission of false claims. *See id.* at *5. In the instant case, it can reasonably be

inferred that the Purdue's fraudulent marketing practices necessarily led to the

submission of false claims, particularly so with respect to the direct sales by

Purdue to Government agencies.

> **c.** **This Trend In Appellate Authority, Which The Government Has Adopted, Of A Flexible, Content-Specific Approach To Rule 9(b), Is Consonant With This Court's Approach In *Harrison*.**

This Court in *Harrison* eschewed a mechanical, checklist approach to Rule

9(b) advocated by Purdue in favor of a flexible, purpose-oriented approach

similar to that taken by the Fifth, Seventh, Tenth and Eleventh Circuits, as well as

the Government:

> A court should hesitate to dismiss a complaint under
> Rule 9(b) if the court is satisfied (1) that the defendant
> has been made aware of the particular circumstances for
> which she will have to prepare a defense at trial, and (2)
> that plaintiff has substantial prediscovery evidence of
> those facts.

*Harrison,* 176 F.3d 776, 784.   As described above, the complaint provides Purdue

with information that is more than sufficient for it to prepare a defense, and

demonstrates that relators had specific "insider" evidence of the lies that Purdue

was telling its customers in its criminal, and highly successful, marketing of

OxyContin.

Accordingly, Purdue's proffered Rule 9(b) alternative basis for affirmance

fails for this reason as well.

### C. Purdue's First-To-File Bar Argument Fails Because It Is Based On A Construction Of 31 § 3730(b)(5) Contrary To Its Plain Language And  Rejected By Every Federal Appellate Court Addressing The Issue.

Purdue's argument that the operation of subsection 3730(b)(5) of the FCA

bars this action relies upon a bizarre construction of the statutory provision that is,

as demonstrated below, at odds with its plain language and that has been rejected

by every federal appellate court that has addressed the issue.

The subsection provides that "[w]hen a person brings an action under this

subsection, no person other than the Government may intervene or bring a related

action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5).

The plain meaning of "pending action" is an action that is currently pending, i.e.,

one that has been filed and has not been terminated by judgment or dismissal.  *See,*

-26-

*e.g.,* www.legal-dictionary.thefreedictionary.com ("A lawsuit is said to be pending from its inception until the issuance of a final judgment by the court.");

www.uslegal.com/a/actionpending/ ("Action pending is the status of an action between the time of the commencement thereof and its final determination by a judgment.").  As Purdue concedes, (Purdue Br. 42), at the time when relators filed their action the Radcliffe Action had already been dismissed, and all appeals exhausted.  Thus, applying its plain language, the first-to-file bar does not preclude this action because the Radcliffe Action was not a "pending action" when this action was filed.

Confronted with the fact that the plain meaning of the statutory language forecloses its argument, Purdue urges a construction of the statutory term "the pending action" that, in effect, rewrites it as "the action, even if it is no longer pending."  Every federal appellate court that has addressed this issue has rejected the construction urged by Purdue and, instead, has construed the statutory provision in accord with its plain meaning.  *See United States ex rel. Batiste v. SLM Corp.*, 659 F.3d 1204, 1210 (D.C. Cir. 2011)("The command is simple: as long as a first-filed complaint remains pending, no related complaint may be

filed.");[11] *United States ex rel. Chovanec v. Apria Healthcare Grp. Inc.*, 606 F.3d 361, 365 (7th Cir. 2010) ("§ 3730(b)(5) applies only while the initial complaint is 'pending.'"); *In re Natural Gas Royalties ex rel. United States v. Exxon*, 566 F.3d 956, 964 (10th Cir. 2009)("if that prior claim is no longer pending, the first-to-file bar no longer applies"); *United States ex rel. Lujan v. Hughes Aircraft*, 243 F.3d 1181, 1187 (9th Cir. 2001)("Following § 3730(b)(b)(5)'s plain language, [relator's] action is barred if she brought the claim while [the first case] was pending")

By including the first-to-file bar in the False Claims Act, Congress was encouraging prompt reporting of fraud by creating a "race to the courthouse," in which only the first-to-file could maintain his suit, *see, e.g., Campbell v. Redding Med. Center*, 421 F.3d 817, 821 (9th Cir. 2005)("the first-to-file bar [] encourages prompt disclosure of fraud by creating a race to the courthouse among those with knowledge of fraud"). To accomplish this purpose, it was not necessary for Congress to make the bar so broad as to give defrauding corporations blanket immunity from a second suit even in the case where an unqualified relator wins the race to the courthouse and has his action dismissed before the merits of the

---

[11] Ironically, Purdue relies on this decision in its argument, (Purdue Br. 44), but fails to note that the decision rejects Purdue's construction of the provision on the determinative point.

fraud allegations are ever reached.  And so Congress chose not to do so.  As the

Tenth Circuit in *Natural Gas Royalties* explained:

> If the first-to-file bar had been meant simply as a more
> draconian public disclosure bar, Congress would not
> have limited it to "pending" actions. While filing the
> complaint might put the government on notice, and while
> the government might remain on notice while the action
> is pending, the government does not cease to be on
> notice when a relator withdraws his claim or a court
> dismisses it. And yet, if that prior claim is no longer
> pending, the first-to-file bar no longer applies . The
> "pending" requirement much more effectively vindicates
> the goal of encouraging relators to file; it protects the
> potential award of a relator while his claim remains
> viable, but, when he drops his action another relator who
> qualifies . . . may pursue his own.

566 F.3d at 964.

Accordingly, the first-to-file bar does not apply here to preclude the instant

action.  *See Batiste*; *Chovanec*; *Lujan*; *Natural Gas Royalties*.

## CONCLUSION

Based on the foregoing and their initial brief, Steven May and Angela

Radcliffe request that the Court reverse the district court's judgment dismissing

their complaint and remand.

STEVEN MAY and
ANGELA RADCLIFFE,
Appellant

By /s/ Mark T. Hurt_____
    Counsel

Mark T. Hurt
The Law Offices of Mark T. Hurt
159 W. Main Street
Abingdon, VA  24210
(276) 623-0808 Telephone
(276) 623-0212 Fax
markthurt@yahoo.com

Paul W. Roop, II, Esq.
Roop Law Office, LC
111 Morning Star Lane
Beckley, WV  25801
(304) 255-7667 Telephone
(304) 256-5984 Fax
paulroop@rooplawoffice.com

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

**CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P.
      32(a)(7)(B) because:

            this brief contains 6,940 words, excluding the parts of the brief
            exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P.
      32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

            this brief has been prepared in a proportional spaced typeface using
            WordPerfect in 14 point Times New Roman.

                                        /s/ Mark T. Hurt
                                        Mark T. Hurt

                                        *Counsel for Appellant*

Dated:  February 28, 2013

**CERTIFICATE OF FILING AND SERVICE**

I hereby certify that on February 28, 2013, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF System, which will send

notice of such filing to the following registered CM/ECF users:

> Susan S. Friedman
> Jennifer M. O'Connor
> WILMERHALE LLP
> 1875 Pennsylvania Avenue, NW
> Washington, DC  20006
> (202) 663-6000
>
> *Counsel for Appellees*

The necessary filing and service were performed in accordance with the

instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street
Suite 230
Richmond, VA  23219
